In re. Chatha, Stephen Shumway, counsel for appellants Rajpal Singh Chatha and Taranjeet Kaur Chatha, Walter R. Dahl, counsel for Appley West States Holdings, LLC. Okay, we can see Mr. Dahl, see Mr. Shumway, okay. There we go. Sorry about that. Mr. Shumway, would you like to reserve a little time for rebuttal? I would like to reserve five minutes, your honor. Okay, I'll try to tell you right at five if I can, okay? Thank you. Okay. Thank you, your honors. I'd like to first go over a little bit of the background on this again. I think that the background, the facts, the circumstances that drive this matter, it's a pretty small, well, from a briefing standpoint, I think it's a fairly small, succinct matter. You know, the decision in this case was rendered, the judgment was filed on March 26, 2019. I'm hearing background noise. Yeah, I am too. If somebody is not actually participating in the argument, if you could mute yourself, I'd be grateful. All right. I drafted an outline of a notice of appeal on April 4th in anticipation of meeting with my clients. I went on them to see if they wanted to appeal the case, and I wanted to be ready in case they did so. I was just going to say, oh my God, I said Gordon Shumway. I did? Well, folks, whoever is participating to not argue, mute your phone. Yeah, it's Judge Lafferty. It's Sarah. Okay, Sarah, can you? Thank you. If you could mute your phone, I'd be grateful. Sorry, Mr. Shumway. I'm going to give you an extra 30 seconds, okay? Thank you, Your Honor. Listen, we're all doing our best under the difficult circumstances. I've had a number of Zoom meetings, and I understand the weight. Anyway, so I met with my clients on the 4th of April, very late in the evening, around 5.30, 5 o'clock, somewhere in that area. They came in, they sat down, we talked about it, and after about an hour of discussion, they wanted to go forward with the appeal. At that hour, I was already ready to leave the office. I had things to do that night. The next day, I had a hearing in front of Judge Hyme on a motion for relief from the state. I had an unlawful detainer trial in Sacramento County Superior Court, and I was representing an accreditor at 341 meeting, where we had some issues regarding fraud and some missing equipment from a restaurant. So I was spending most of that evening working on those matters. Now, I knew that I was going to be done by about, well, my 341 meeting was at 1 o'clock, so I had plenty of time in the afternoon to come back and file the appeal, finish out the appeal and get that filed. As I'm leaving the courthouse, I find out that my mother, who was 87 years old at the time, I'm sorry, she just passed away the day after Easter, but she was 87 years old a year ago. And she had scoliosis. She had shrunk from 5'8 to 5'2 because of the scoliosis. She had back pain. She had numbness in her legs. She had fallen before. She had just gotten out of 30 days rehab where they were trying to get her muscle strength back where she could get up and move around. And so it was a touchy situation for me. Now, granted, I do have four brothers and one sister who live within 30 miles of my mother. And I call them constantly trying to get them to perform services for her to check on her and see what's going on. They were not responding. Things were not happening. I'm long distance, 600 miles away, trying to make sure that things are taking place. When she fell, yes, I had a great concern. I was really upset. I went home. I got on the phone with my brothers. I got on the phone with the doctors trying to find out where my mother was. And frankly, the last thing on my mind was my practice. That may be not the way it should be, but that's the way it happened in my case. So, counsel, just to clarify, is that the day that the notice of appeal was to be filed, the last day that it could be filed timely? That is correct. Okay. So, I just want to make sure. That day, as I'm on my way back to my office to file the appeal, this happens and my mind goes in a different direction. And one of the reasons that this hit me as hard as it did was because my father passed away in 2009, and I had an opportunity to go visit him one week before he passed away, and I chose not to go. I sent my wife and chose not to go because I was busy taking care of my practice, and having missed him before he passed away, this was weighing heavily on my mind. Now, so, as a background, now, getting into this, the circumstances as to whether or not there was an excusable neglect, the lower court cited the Air Advancement Services for the four-point test. Just one second. So, what happened the next day? The next day, I'm busy taking care of other things. I'm on the phone with the doctors. I'm setting up a medic alert so that my mom now has a machine. She, you know, pulls the button if she falls. I fall and I can't get up, that company. And I talk to my brothers and sisters and say, look, you know, we need a schedule. You've got to work this out. I'm doing, I'm trying to get what I had scheduled at work done with what I was trying to take care of my mother. What happened the next day? The next day, I'm in court and I'm taking care of some other matters, and I get back from court and it hits me that here's this paper sitting here that I haven't finished. So, I immediately look at that, recognize that I'm already delinquent on filing the papers. I'm also sitting as a pro tem the next morning in Placer County Superior Court, and I've got to prepare for the hearings the next day. That day, as soon as I get out of Superior Court, I go and I file the notice of appeal. That's about a day, right, after you've figured out that you have a problem? I think there was a two-day lapse between the 8th and the 11th. Is there a particular reason why you didn't file with a notice of appeal that, you know, you knew was late? A particular reason why you didn't file the motion for leave then, or didn't do it until what I think might have been the last day you could have done that? No, I filed the notice of appeal hoping that I was sliding in under the deadline. But you pretty well knew you weren't, right? Because you said on the 11th you realized, oh my gosh, I should have done this thing, I didn't do it, right? Right. Okay, I got you. And then when I received notice from the appellate panel that, hey, you're late, that's when I took it upon myself to file the motion to file a late appeal. And that was the last day you could have done it, right? I'm sorry? You did it the last day you could have done it. Well, I did it as soon as I got the notice from the appellate panel. So, yes, that would have been the last day. Okay. Have you filed appeals before? I have filed – well, actually, I've appealed against Jaime once before. I filed two prior appeals in my 35 years. A notice of appeal is – One of those appeals was in a state court action. It has a 60-day timeline. Right, but the notice of appeal itself is just a single document, one line that says I appeal the decision, and you either list the document, the date of the order, or you attach a copy of the order to the notice, and that's it, right? That is correct, Your Honor, and I would have – and I had that prepared. I mean, I had the outline prepared, but I couldn't file that without my client's permission. If you had filed it before your clients gave permission and they decided not to go forward with the appeal, you simply withdraw the notice of appeal, right? Well, that was not my understanding. My understanding was that taking action without authorization from your clients is kind of a breach of your ethical duty to your clients. And alternatively, missing the deadline and subjecting your client to no review of a decision and creating malpractice was a better choice? No, Your Honor. At the time that I drafted the notice of appeal, I was not planning on being late with the appeal. It was only when circumstances caused me to miss the date that that issue came up. If my clients had come to me on the 4th, 5th, 6th, it would never have happened. Unfortunately, the perfect storm hit and it happened on the 8th. So when Judge Hyme made his decision, did he set forth what he was required to review, what standard he was required to assess this decision under? He referred to Pioneer Investment Services and he went through the four steps. He focused on Gibbons v. United States, which is an 8th Circuit case, instead of Kay v. Andrews, which is a 9th Circuit case, which gives equal credence to all four issues. He then went on to discuss that my situation was not as dramatic or as drastic and maybe shouldn't have caused me the concern that it did because it didn't meet the same examples that he cited in Schultz, where a husband and his wife had a medical condition, but he ended up working part-time. He threw the medical condition, but still missed a deadline. And another case where a wife suddenly had a seizure and eventually died. He tried CPR and she died and he missed a deadline. Your mother dying is not as bad. Okay, we're at about 4.30. Let me give you a question you can think about and answer when you come back. It seems like the cases are not hung up on how compassionate we should be. The cases seem to turn on how directly did these circumstances affect and prevent the doing of whatever the act was supposed to be. And that seems to be the test, at least in the cases that Judge Hyme relied on. Let me come back. If you want to react to that, I'd be grateful. Okay? Thank you, Your Honor. Thank you. Okay, Mr. Dahl? Judge Lafferty, Judge Brand, Judge Gann, it's nice to appear before you. Thank you. And I wish I could appear before you in person, but I guess that'll have to wait for another time. It'll have to wait for a while. Your Honors, I think that this is a difficult argument for Mr. Shumway, and it's a difficult argument for me as well. I appreciate it. Let me ask you a question right out of the box, okay? Yes, sir. Mr. Shumway alluded to Pinkay as being a little bit different standard, arguably, from the case that was most readily cited by Judge Hyme. And what Pinkay does seem to say is that one should look at the factors, quote, you know, equally or something along those lines. Do you think that this judgment is criticizable in that really only, you know, I think a fair reading of Judge Hyme's ruling is factors one and two were at the worst neutral and might actually have been somewhat in favor of relief. Factor four, I think, he ascribed some of the delay to, you know, a lack of good faith. As we discuss this, we might agree that that really fits more easily under three. What really happened here was Judge Hyme, I think, just had a very definite opinion about factor three. And the question is, was that the appropriate balance? Should he have balanced this a little bit differently? I'd love to hear your thoughts on that. Your Honor, I think that Judge Hyme could have balanced it a different way. I think you might have, Judge Gann might have, Judge Brand might have. But he did, he was the trial judge in the discharge lawsuit that was the ultimate attempted appeal. And he has seen both of us work. I don't want to say anything bad about Mr. Shumway. I like Mr. Shumway very much. But this is a case where it's an abusive discretion issue. And the judge has to take into account a broad variety of factors. Obviously, the four that are cited in Pioneer are, I guess, the most important. I think it's possible that Judge Hyme, judging by the 15-page memorandum that I think it's possible that Judge Hyme believed that the one day delay between recognition on the 11th and filing on the 12th called into question the good faith. But on balance, this is what Judge Hyme decided. And I believe that the record indicates that there's support for what he decided based upon the abusive discretion standard. I don't know if I answered your question. Well, you did. And thank you for doing it so directly. And I didn't mean to keep you away from all your other great arguments. I don't have a lot of other great arguments. We'll be the judge of that, okay? So what I hear you saying is, in your view, this was a decision that he had the right to make. He applied the right standard. He found facts as he found them. None of the facts were not supported by the record in some regard. Either there was evidence that was undisputed or he had to discern what this meant. That was what he was empowered to do. We may not agree with it, but it falls within the range of acceptable conduct by the judge under the circumstances given the evidence that was presented. Yes, sir. Yes, sir. I've been practicing a long time, just as Mr. Shumway has. And sometimes, were I to come to Arizona and be in your court, there's things I might not like that you did or decisions that you issued. But ultimately, you have quite a bit of discretion as a judge. And Judge Hyme was exercising that discretion. Again, it might have been different than the way you decided or I would have decided or Judge Brand would have decided, but that's what he did. Okay. You have ten minutes. If you are finished, you're finished. That's just fine, Mr. Dahl. It's totally up to you. Well, one of my clients a long time ago gave me a small little white card that said, know when to stop talking and do. I'm done. Okay. Thank you very much. Thank you. Okay. Mr. Shumway? Judge, your honors. I'm going to say you've got five minutes somewhat arbitrarily because I think you lost about 30 seconds in the back and forth. Okay? I appreciate that. I may not need it, but I appreciate having it. Okay. The question is, comparing, I guess, my circumstances to the circumstances that were in the two cases cited by Judge Hyme, what should be the standard to determine whether or not there's excusable neglect? Each individual reacts a little bit differently to situations and circumstances, and I understand that the judge, the court has to come up with some kind of objective standard to incorporate or to understand these subjective situations involving counsel. Now, in the one case you've got a – well, in the two cases, both cases involved the lawyer's spouse, and I fully understand if my wife was to suddenly take ill or to fall ill or something like that, I would have the same reaction that those two attorneys did, and I would be by her side and taking care of things, and yes, that would cause neglect. But I don't think that it's any different when it's your mother, especially under this situation where I'm 600 miles away, I've got brothers who don't seem to want to take care of things, and I've got to concern myself not only with what's going on with my mother, and at that time – Can I clarify one point? Yes, sir. Did you make the argument before Judge Hyme that your brothers were not, in your view, likely to do what needed to be done? I did. I said I have siblings and nieces and nephews back there, but I can't depend on any of them to ever do anything. No, but that was in the record before Judge Hyme. That was. Okay, thanks. And not exactly those words. Mr. Shumway, just to make it clear, maybe I'm misunderstanding this, but it seems to me what you're saying is that you think your arguments, your position was as compelling as some of the other cases, and for Judge Hyme not to adopt that rationale from those other cases and to employ it in your case would be wrong, and we ought to tell him that's not the way this ought to work. It ought to be uniform. It ought to be applied the same in various similar circumstances, where there's a death or where there's an injury to a close family member, and so since he didn't do that here, we should find that that's an abuse of discretion. Is that a fair statement? That's close, yes, Your Honor. I think that I don't want to take away from Judge Hyme's discretion, but within an objective standard, once you meet certain thresholds, and I think that maybe a mother is not as important as a wife. In my case, it is, but I think once you've reached that standard, that that should certainly take the biggest weight in figuring out the circumstances and whether or not you meet that subjective standard of excusable and correct. So let's assume that the relationship is equal. Does he then take into consideration the delay that was occasioned by it, how many days, what other activities occurred, what could have been done and wasn't done in the interim? Does he have a right to balance that into the equation and say, okay, I'll say your mother is an important figure, but you had one, two, or three more days before you took any action. That, to me, doesn't answer the, in his mind, doesn't balance the same as those other cases. Well, I understand, but in those other cases, there was longer delay than my three days. There were, in one case, several days, and in one case, I think there was even a month or two. So, you know, my recovery was much faster than theirs, and I acted as quickly as possible as soon as I discovered the situation. I'm going to give you a chance to answer this if you go over, because I think it's fairly critical. The difference in the standards seems to be this. The way Judge Hyme read the cases where he found excusable neglect, the traumatic event occurred in a context in which the attorney really was prevented from doing something because it was right in front of that person, and that person needed to be physically involved in care or something else that literally took their time away from the task. Arguably, that was not the case with you, but your argument seems to be that that's the wrong focus. Once you find the threshold of, for lack of a better word, upsetting circumstances, the rest of it sort of doesn't matter, and that's really what Judge Hyme applied was just not the right standard. Is that a fair statement? I think it goes a little bit beyond that, Your Honor. In the other two cases, those two individuals, those two attorneys, had additional time after the event occurred. I see. Okay. I was already at the deadline. Okay. Because I think, like Judge Gann, I'm wondering how far do we... I mean, we have to go pretty far to say somebody abused their discretion. So if we get convinced that, boy, there's just a standard out there that doesn't make any sense, and unfortunately Judge Hyme applied it, then okay. But if this is something that is simply within his discretion, it's tough for us to... You can imagine. Okay? I fully understand that, and that's what makes this a pretty narrow-focused appeal. By the way, my condolences. I'm very sorry. Thank you, sir. Okay. Anything else? That's all, sir. All right. Then the matter is submitted. Thank you for your very good arguments, and thanks to both of you for your wonderful professionalism in a very difficult circumstance. Thanks to both. Thank you, judges. Thank you. Thank you. Thank you.
judges: Lafferty, Brand, Gan